# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

**BOBBY FUENTES, Administrator**  **:**
**Of the Estate of Alejandro Santos,**
**Decedent,**  **:**

        **Plaintiff**    **:**    **CIVIL ACTION NO. 3:19-1111**

        **v.**        **:**      **(JUDGE MANNION)**

**USAA GENERAL IDEMNITY CO.,**  **:**

        **Defendant**    **:**

## MEMORANDUM

Presently before the court are the cross-motions for summary judgment filed by the defendant USAA General Indemnity Company and the plaintiff, Bobby Fuentes, in his capacity as Administrator of the Estate of Alejandro Santos, decedent, ("Santos"), pursuant to Fed.R.Civ.P. 56. (Docs. 35 & 55, respectively). In this case, plaintiff Fuentes has a claim for underinsured motorist ("UIM") benefits with defendant seeking coverage related to Santos' fatal accident and the parties basically dispute whether Santos qualifies as an insured "family member" under the insurance policy defendant issued to plaintiff. Plaintiff alleges that defendant breached his insurance contract when it denied his UIM claim. Plaintiff also asserts a bad faith claim against defendant regarding the manner it handled his claim. (Doc. 1-7). At issue is

whether Santos resided with plaintiff, the named insured, at the time of the accident, and if Santos Estate is entitled to UIM benefits under the Policy defendant issued to plaintiff. Based on the following, the court will deny plaintiff's motion for summary judgment on his claims in Counts One and Two, and it will also deny defendant's motion for summary judgment on these two Counts since too many disputed material facts exist. The court will deny defendant's motion for summary judgment with respect to its counterclaim for Declaratory Judgment. The court will grant defendant's motion with respect to plaintiff's bad faith claim, Count Three, since plaintiff failed to meet his burden of proof by clear and convincing evidence.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a tragic car accident that occurred on December 25, 2015. Santos was a passenger in an automobile driven by Alaysia English traveling southbound on Long Pond Road, Tobyhanna Township, Monroe County, Pennsylvania. Santos owned the automobile English was driving and it was insured by Garrison Insurance Company. Frank May was operating a motor vehicle traveling eastbound on Long Pond Road. Plaintiff alleges that May and English operated their vehicles in "negligent, reckless and careless manners that resulted in a violent collision between the

vehicles." As a result of the accident, Santos suffered fatal injuries and was pronounced dead in the evening of December 25, 2015.

The plaintiff was covered by an automobile insurance policy numbered GIC 02660539171027, (the "Policy"), issued by the defendant. The Policy insured a 2005 Saturn Vue, a 2013 Ford Explorer, and a 2014 Mercedes E Class, and it had an underinsured motorist (UIM) coverage limits of $100,000.00 per person and $300,000.00 per accident.

May was uninsured at the time of the accident. Santos' car that English was driving had $15,000 in liability coverage under his Garrison policy, which was separate from plaintiff's Policy. On May 30, 2017, Garrison tendered to plaintiff the full amount of the limits on the policy issued to Santos.

Plaintiff made an UIM claim with the defendant under his Policy because he alleged that Santos' damages exceeded the $15,000 policy limits on the Garrison policy issued to Santos. Plaintiff alleges that Santos was an insured family member under his Policy and entitled to UIM coverage at the time of the accident since he was living in the plaintiff's household. In particular, plaintiff was married to Santos' mother and Santos was plaintiff's stepson.

The plaintiff initially filed a Writ of Summons on December 22, 2017, in the Pennsylvania Court of Common Pleas for Lackawanna County. On

January 18, 2018, plaintiff's counsel sent a Letter of Representation to defendant regarding a UIM claim.

On March 11, 2019, defendant advised plaintiff that it needed to "engage in discovery to develop the facts" and requested plaintiff to file a Complaint with respect to his claim for UIM benefits under his Policy. Two days later, defendant USAA filed a Praecipe for Rule to File Complaint in the Lackawanna County Court of Common Pleas.

Plaintiff then filed his Complaint in state court on May 30, 2019. Plaintiff's Complaint raises three counts against defendant: UIM Claim, Count One; a breach of contract claim, Count Two; and a bad faith claim in violation of 42 Pa.C.S. §8371, Count Three. (Doc. 1-7).

On June 28, 2019, defendant filed a Notice of Removal removing this case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. §1332. (Doc. 1).

Defendant then filed a motion to dismiss plaintiff's bad faith claim. On July 22, 2019, the court denied defendant's motion to dismiss plaintiff's bad faith claim. (Docs. 3, 8 & 9).

On August 28, 2019, defendant filed its answer to the complaint with affirmative defenses as well as a counterclaim for Declaratory Judgment against plaintiff. (Doc. 12).

4

Following the initial discovery deadline, defendant filed its instant motion and brief in support on November 12, 2020, seeking summary judgment on Counts One, Two, and Three of plaintiff's complaint, as well as the entry of judgment in its favor on its counterclaim for Declaratory Judgment. (Docs. 35 & 36). Defendant also filed its statement of material facts and Exhibits in support of its motion. (Docs. 37-44). The court then extended the discovery deadline and defendant filed a supplemental brief on January 18, 2021 in support of its motion to address the additional discovery. (Doc. 54).

On January 9, 2021, plaintiff filed his cross-motion for summary judgment, statement of material facts, and brief in support with Exhibits. (Docs. 55-57).

The plaintiff filed his opposing brief to defendant's motion and his response to defendant's statement of material facts on February 3, 2021. (Docs. 63 & 64).

Defendant filed its brief in opposition to plaintiff's motion for summary judgment and its response to plaintiff's statement of material facts on February 12, 2021. (Docs. 66 & 67).

Both parties then filed reply briefs in support of their respective motions. (Docs. 68 & 69).

As such, both motions for summary judgment are now ripe for the court's ruling.[1]

## II.    MATERIAL FACTS

The court does not fully repeat the facts stated above. Further, the court only includes relevant and material facts, and it does not include conclusions of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986) (Holding that a fact is "material" if it "might affect the outcome of the suit under the governing law."). Defendant sold an automobile insurance policy to plaintiff Fuentes, number GIC 02660 5391 7102 7, which was effective for the time period of 10/01/15 to 03/06/16, including the date of the accident which caused Santos' death. Plaintiff's Policy had UIM coverage with limits of $100,000/person and $300,000/accident. At the time the Policy was issued to plaintiff, Santos was identified as a listed driver. However, prior to the accident, in September 2015, plaintiff Fuentes directed defendant to remove Santos as a listed driver on his Policy.

---

[1]The court notes that on June 18, 2020, defendant filed a motion to bifurcate the trial and to stay the bad faith claim pursuant to Federal Rule of Civil Procedure 42(b). (Doc. 21). On March 30, 2021, the court denied defendant's motion. (Doc. 70).

Plaintiff's Policy states: "[w]e will pay compensatory damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of BI [bodily injury] sustained by a covered person and caused by an auto accident." "Covered person" is defined in the Policy as: "1. You or any family member. 2. Any other person occupying your covered auto. 3. Any person for damages that person is entitled to recover because of BI to which this coverage applies sustained by a person described in 1. or 2. above." "Family member," for purposes of the Policy, is "a person related to you by blood, marriage, or adoption who resides primarily in your household." The address listed for plaintiff Fuentes on the Policy was 1057 Delaware Lane, Stroudsburg, Pennsylvania.

Santos was plaintiff's stepson.

Before the accident, and after plaintiff had removed Santos as a listed driver on his Policy, Santos purchased a 2011 Chevrolet Cruze in October 2015. Santos then obtained his own Pennsylvania Auto Policy with Garrison Property and Casualty Insurance Company ("Garrison"), and his policy listed the Cruze as the insured vehicle. Santos' policy with Garrison included coverage for non-stacked underinsured motorists benefits ("UIM") in the amount of $15,000, and the policy indicated that Santos' address was 345 Coach Road, Tobyhanna, Pennsylvania. Santos' Garrison Policy was in

7

effect at the time of the accident. Thus, Santos' Cruze vehicle, in which he was a passenger and English was driving at the time of the accident, had $15,000 in liability coverage.

On May 30, 2017, the full amount of coverage was tendered to plaintiff by Garrison with respect to plaintiff's first-tier UM claim under Santos' auto Policy but plaintiff alleges that this was inadequate to cover the losses suffered by Santos.

After the accident, plaintiff submitted a second-tier UIM claim under his Policy with defendant on behalf of the Santos Estate.

On December 22, 2017, plaintiff initiated this action and preserved his two-year statute of limitations by filing a Writ of Summons against defendant in the County Court.

On March 22, 2018, plaintiff sent a letter to defendant confirming that defendant was still investigating whether there were other policies, in addition to the Policy covering Santos' vehicle in the collision, issued by defendant for an insured residing at plaintiff's address.

On October 5, 2018, plaintiff made a demand to defendant for the UIM limits on the Policy issued to him on behalf of Santos Estate.

On November 6, 2018, plaintiff received a letter confirming that Garrison tendered the UM policy limits of $15,000 under the policy it issued to Santos. To date, plaintiff has not accepted the tender from Garrison.

With respect to plaintiff's UIM claim on behalf of Santos Estate under his Policy, while investigating the claim, defendant identified a coverage issue, i.e., whether Santos resided primarily in the plaintiff's household at the time of the accident. As such, defendant issued a Reservation of Rights to plaintiff and informed him that it had identified coverage issues that it was investigating. Defendant indicated that it did not have sufficient information to confirm that Santos was covered by plaintiff's Policy. Thus, defendant requested information regarding the issue of whether Santos was covered by plaintiff's Policy, i.e., that it was seeking documents with respect to the residency status of Santos at the time of the accident.

Plaintiff then provided information to defendant regarding Santos' residency. Specifically, on February 19, 2019, plaintiff Fuentes sent defendant USAA the following documents regarding Santos' residency: Santos' driver's license; Santos' local tax form; Santos' 2015 W2 form; Santos' 2016 W2 form; signed and notarized Affidavits from plaintiff Fuentes and his wife; and a bill for ambulance services from the day of Santos' death.

These documents provided by plaintiff all reflected Santos' address as 1057 Delaware Lane, Stroudsburg, Pennsylvania, i.e., plaintiff's residence.

At the time of the accident, Santos was an 18 year old senior in High School at Pocono Mountain East located in the Stroudsburg area and, he was still enrolled there at the time of his death. Santos' student transcript from Pocono Mountain East High School listed his address as plaintiff's house, 1057 Delaware Lane, Stroudsburg, PA, at the time of his death.

Plaintiff testified that at the time of the collision, the residents of his household were himself, his wife Eva Fuentes, ("Eva"), Santos, and the two daughters he had with Eva. Eva Fuentes also testified that at the time of the accident, her son Santos resided with plaintiff and herself along with their two daughters. Plaintiff and Eva Fuentes also testified that there was never a time before the accident that Santos moved to another residence or moved any of his personal belongings to anywhere outside of their house. Also, they stated that Santos had his own bedroom and bathroom at the Fuentes' house.

Plaintiff and Eva testified that from September 2015 up to December 25, 2015, Santos received various mail at their residence, including credit card statements and bank statements. Eva also stated that Santos received school letters and letters regarding his position as a volunteer firefighter at

her house. Additionally, plaintiff and Eva Fuentes testified that Santos did not move in with his girlfriend, English, and that Santos was not residing with English at the time of the accident. Eva stated only that Santos stayed with English a couple of times.

Specifically, Eva stated that Santos got mad at her and plaintiff in early December of 2015, and that he stayed with English for a few days until things cooled down. However, Eva stated that Santos returned to her house about three days later. In fact, Eva stated that when she picked up Santos at English's house after the argument, he only packed a book bag with a few clothes.

Eva stated that after the argument incident, Santos would occasionally stay with English at her home. However, both plaintiff and Eva testified that Santos did not reside anywhere besides their house at the time of the accident, and that he had always resided with them.

English, on the other hand, testified that Santos came to live with her after he got into an argument with his parents in the summer of 2015 and not in early December 2015. English stated that from the summer of 2015 until his death, Santos lived at her home she shared with her mother located at 345 Coach Road, Tobyhanna, Pennsylvania. In particular, English stated that Santos moved into her house around September 2015. English stated that

11

Santos shared a bedroom and bathroom with her in her mother's home after moving in with them. English further testified that after Santos had moved to her Tobyhanna home and began to live there, Santos continued to attend Pocono Mountain East High School as a senior, but traveled back and forth between school and her Tobyhanna home each day. English testified that Santos retrieved personal items from the Fuentes house, including "almost his entire closet" of clothing and the rest of his shoes. Additionally, English stated that Santos received mail at the house he shared with her, her sister, and her mother in Tobyhanna.

English's mother, Josefina Garcia, testified that she believed that Santos would be moving home with his parents at some point following the argument incident, and that her understanding was that he would be only staying with them temporarily. However, Garcia confirmed that Santos never moved back to the Fuentes home, or anywhere else, before his death.

Monica Schramm, the claims examiner who initially handled the first-tier UM claim under Santos' Garrison Policy, testified that English stated that Santos was living with her. Schramm stated that this is the only information she received as to Santos' residence besides Garcia telling her that Santos received some mail at her house. Schramm testified she did not conduct any other follow-up or investigation to determine where Santos was residing on

the date he died other than taking English's statement one year after the accident. However, defendant points out that Schramm was not the claims adjuster assigned to the underlying claim, i.e., the second-tier UIM claim, under plaintiff's Policy which is at issue in this case. Defendant also points out that the issue of Santos' primary residency was not part of Schramm's handling of the first-tier UM claim under Santos' Garrison Policy.

Plaintiff's second-tier UIM claim under his Policy, made on behalf of Santos Estate, was assigned to Colleen Beth Ricks and, she testified that as the claims adjuster she was responsible for determining if Santos was a physical resident of plaintiff's household or his girlfriend English's household at the time of the accident.

Ricks testified that when she reviewed the plaintiff's UIM claim there was an issue as to where Santos resided based upon information received from English. Ricks testified that she did not contact plaintiff either directly or through his counsel to obtain information as to where Santos resided on the day that he died. However, Ricks explained that when plaintiff's second-tier UIM claim had been assigned to her, plaintiff was already represented by counsel and had already initiated his lawsuit against defendant. Ricks also testified that when she made the determination that Santos was not a

member of plaintiff's household, based on information she received from plaintiff's counsel, she initially thought that plaintiff was Santos' grandfather.

Ricks also acknowledged that there was a claims note dated January 16, 2018, authored by Cecilia Butler, one of defendant's litigation claim adjuster, that indicated "[Fuentes'] Att[orney] claims Santos lived with [Fuentes]."

Ricks testified that she investigated where Santos' residence was and that she did the following:

> I reviewed the Fuentes' policy, because he -- I knew that [Santos' car] was a [Plaintiff's]... vehicle. [Santos'] policy showed the address, when he bought the Chevy Cruz showed the English address or I should say Garcia, at his girlfriend's and mother's address, and that the father [plaintiff] removed him [Santos] [from plaintiff's Policy] on September 30 of 2015 before the accident. And it said removed operator.

Ricks further acknowledged that even though plaintiff removed Santos from his own Policy, this fact "does not necessarily mean that [Santos] was not a resident relative of [plaintiff]." Ricks testified that although she relied upon the fact that plaintiff removed Santos as a named insured on his Policy, it was the removal of Santos from the plaintiff's Policy in addition to the existence of Santos' own Garrison Policy with a different address than plaintiff's house, namely, the address of English's house, that was compelling to Ricks.

14

Ricks also stated that a statement under oath was never taken of plaintiff as part of her investigation into where Santos resided when he died. Ricks acknowledged that she received and reviewed the above stated documents regarding Santos' residence which plaintiff provided to defendant purportedly showing that Santos lived at plaintiff's house, such as Santos' driver's license, his tax records, the Affidavits of plaintiff and Eva, and the ambulance bill from the accident, which all indicated that Santos' address was plaintiff's house located at 1057 Delaware Lane, Stroudsburg, Pennsylvania.

Ricks then determined that Santos was not a resident of plaintiff's house based, in part, on Schramm's investigation which relied upon English's recorded statement that Santos was living with her at the time of the accident. However, Ricks also relied upon the facts that before the accident plaintiff removed Santos from his Policy and that Santos used English's address for his Garrison auto Policy.

Ultimately, defendant denied plaintiff's UIM claim stating that coverage for UIM benefits under plaintiff's Policy did not extend to Santos since he was not a "Covered person" under the Policy at the time of the accident.

## III.   DISCUSSION

Since the parties state the correct legal standard for a motion for summary judgment in their briefs, the court will not repeat it herein.

Plaintiff and defendant both move for summary judgment in their favor with respect to plaintiff's UIM and breach of contract claims, Counts One and Two. In addition, defendant moves for summary judgment on plaintiff's bad faith claim, Count Three. Defendant also seeks summary judgment on its Declaratory Judgment counterclaim asking the court to determine that it does not have to pay plaintiff's UIM claim for Santos Estate under his Policy. At issue is whether Santos was an insured family member or covered person under the plaintiff's Policy on December 25, 2015, the day of the accident, who resided primarily in the household of plaintiff, the named insured of the Policy that provided UIM coverage. No doubt that Santos needed to be a resident of the plaintiff's household in order for his Estate to recover UIM benefits under plaintiff's Policy. The parties dispute whether Santos was such a resident in plaintiff's household and as such he was a covered family member under plaintiff's Policy, or whether Santos had moved out of plaintiff's house in about September 2015, and resided with English, his girlfriend, at the time of the accident. There is evidence to support the positions of both parties regarding Santos' residence and the court finds that

16

there are simply too many disputed material facts as to whether Santos was a "resident", in the insurance policy context, of plaintiff's house or a resident of English's Tobyhanna house at the time of the accident.

Defendant largely relies upon its evidence that prior to the accident, plaintiff removed Santos from his auto Policy with defendant, that Santos then bought a Cruze car and used English's Tobyhanna address when he obtained an auto policy with Garrison for his car. At the time of the accident, both plaintiff's Policy with defendant and Santos' policy with Garrison were in effect. Defendant also based its denial of coverage on English's unequivocal testimony that Santos was living with her and her mother since September 2015.

Since jurisdiction of this court is based on diversity pursuant to 28 U.S.C. §1332(a), Pennsylvania substantive law applies to the court's analysis of the Policy's language.

In order to establish his insurance breach of contract claim, plaintiff must prove three elements: (1) the existence of a contract between he and defendant, as well as the essential terms of the contract; (2) that defendant breached the contract; and (3) that plaintiff suffered damages as a result of the breach. *McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010).

At issue is whether defendant breached plaintiff's Policy be denying his UIM claim. In plaintiff's Policy, "'Family member' means a person related to you by blood, marriage, or adoption who resides primarily in your household." "Covered person" under the Policy includes the insured or any family member. The UIM coverage provision in plaintiff's Policy provided that defendant would pay damages for injuries which a covered person was entitled to recover from the owner of an underinsured vehicle who caused an accident.

Initially, since Santos was related to plaintiff by marriage, this case turns on whether Santos was a "family member" of plaintiff and the term "resides primarily in [plaintiff's] household" as used in the Policy must be considered.

Defendant argues that Santos does not qualify as a "family member" because he did not reside with plaintiff at the time of the accident, while plaintiff contends that Santos lived continually in his house since he and Santos' mother moved into it in 2012. The court must first consider whether the Policy's definition of "family member" is ambiguous. There is no dispute that the terms "resides" and "primarily" are not defined in the Policy.

As the Third Circuit in First Liberty Ins. Corp. v. McGeehan, 809 Fed.Appx. 75, 78 (3d Cir. 2020), recently explained:

18

"Under Pennsylvania law, an insurance contract is ambiguous where it: '(1) is reasonably susceptible to different constructions, (2) is obscure in meaning through indefiniteness of expression, or (3) has a double meaning.'" *Viera*, 642 F.3d at 419 (quoting *Lawson v. Fortis Ins. Co.*, 301 F.3d 159, 163 (3d Cir. 2002)). "Straightforward language in an insurance policy should be given its natural meaning." *Lawson*, 301 F.3d at 162. Parties' disagreement on the proper construction of a provision does not render it ambiguous. *Trombetta v. Raymond James Fin. Servs., Inc.*, 907 A.2d 550, 562 (Pa. Super. Ct. 2006). Whether a contract is ambiguous is a question of law for the court to decide. *Id.* at 561–62; *Thomas Rigging & Constr. Co., Inc. v. Contraves, Inc.*, 798 A.2d 753, 755 (Pa. Super. Ct. 2002).

In McGeehan, the Third Circuit affirmed the district court's "conclusion that the Policies' definition of 'family member' is not ambiguous and requires that an insured individual, however related to the policyholders, reside in the policyholders' household." *Id*. In McGeehan, the Policies defined "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." The only difference with the definition of family member in this case with the one in McGeehan is the last phrase and this difference is not significant. Thus, the court finds that based on McGeehan, the definition in plaintiff's Policy of "family member", which requires the person related to the insured to reside primarily in the insured's household, is not ambiguous. *See id*. at 79 ("We thus will affirm the District Court's holding that the Policies' definition of 'family member' is unambiguous and that all categories of people it describes must be residents of the policyholders' household.").

19

As such, in order to address the salient issue of whether Santos resided primarily in plaintiff's household at the time of the accident, and whether he met the definition of "family member" as provided for in the plaintiff's Policy with defendant, the court "must look to Pennsylvania common law." *Id.*

In McGeehan, *id.* at 79-80, the Court addressed how Pennsylvania courts define resident and stated:

> In *Amica Mutual Insurance Co. v. Donegal Mutual Insurance Co.*, the Pennsylvania Superior Court interpreted the word "resident" in a materially identical auto insurance provision. 376 Pa.Super. 109, 545 A.2d 343, 344 n.1 (Pa. Super. Ct. 1988) ("'[F]amily member' means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child." (quoting auto insurance policy)). In that case, the driver was a child of divorced parents, and the insurance policy belonged to her father. *Id.* at 345. During the relevant time period, she lived primarily with her mother, and her visits to her father's house were "sporadic." *Id.* She nonetheless kept "a closet or two full of clothes at her father's house, approximately forty pairs of shoes, books, cosmetics, stuffed animals, tennis equipment, and a pet rabbit," and she received mail there. *Id.* In prior years, she had spent more time at her father's house, and she planned to live with him during the upcoming summer, before starting college. *Id.*
>
> The Superior Court interpreted "family member" to include only those "who actually reside in the household of the insured." *Id.* at 346. It found that the child's belongings were at her father's house "for convenience and did not evidence that she physically lived there." *Id.* The court held that "as a matter of physical fact," the driver resided at her mother's house at the time of the accident. *Id.*; *cf. Krager v. Foremost Ins. Co.*, 304 Pa.Super. 390, 450 A.2d 736, 737 (1982) (finding residency established under an analogous policy where the plaintiff lived with his mother from April through November, including at the time of the accident).

In the instant case, the facts are clearly controverted as to whether Santos was physically present and living in English's Tobyhanna house as of September 2015 through the date of the accident or whether he only briefly left plaintiff's house after an argument and then returned there. Santos still was using plaintiff's address for various purposes as stated above, but he also used English's address when he bought his car and he began to receive mail at both houses. These facts only go to show that there are significant disputes in the evidence as to where Santos actually resided when the accident occurred. "Unlike a person's domicile, which is a 'matter of intention,' one's residence is "a physical fact." *Id*. at 80 (citing *Laird v. Laird*, 279 Pa.Super. 517, 421 A.2d 319, 321 (1980)). "Residency requires 'at the minimum, some measure of permanency or habitual repetition.'" *Id*. (citing *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. Ct. 2007) (quoting *Erie Ins. Exch. v. Weryha*, 931 A.2d 739, 744 (Pa. Super. Ct. 2007)).

The court finds McGeehan, *id*., is instructive, in which the Third Circuit held:

> Here, the physical facts, as set forth by the parties and as evidenced by the record [], do not demonstrate that Adam and [his girlfriend] [who were living together at the time of the accident] were "residents" of [his parents'] household. As in *Amica*, Adam's past residency at the home, intended future visits, maintenance of many belongings, and receipt of mail do not establish residency. *See* 545 A.2d at 345–46. Nor do his and Laura's periodic visits or other ties to the Erie area [where his parents lived]. We thus will affirm the District Court's conclusion that Adam and [and his girlfriend] are not "family members" under the Policies because they do not reside in [his parents'] household.

21

*See also* <u>Travelers Personal Ins. Co. v. Estate of Parzych</u>, 675 F.Supp.2d 505 (E.D. Pa. 2009).

English and her mother stated that Santos was living with them in their Tobyhanna house as of September 2015, when he had an argument with his parents. English stated that she and Santos shared a bedroom and a bathroom in her mother's house and that he had taken almost all of his clothes and shoes from his parents' house and bought them to her house. Although Santos used both addresses for certain documents and received mail at both addresses, defendant points to the evidence that in September 2015 plaintiff removed Santos from his auto Policy and when Santos bought his own car in October 2015, he used English's address. Defendant also contends that the evidence shows that Santos had only one residence with English even though he had "occasional, sporadic, and temporary contacts" at his parents' house, and that "[s]uch contacts are insufficient to establish residence." <u>Estate of Parzych</u>, 675 F.Supp.2d at 511. Also, defendant points out, (Doc. 66 at 11), "these documents [of Santos with plaintiff's address], at best, demonstrate that Santos at one time had either lived in the Fuentes' household or listed the Fuentes' household address on various documents", and they do not prove that Santos was living with the Fuentes at the time of the accident. Further, defendant states that Santos was made to return his

key to the Fuentes house, and that Santos was given a key to the house English shared with her mother. Further, defendant states that plaintiff admitted that after their argument and Santos went to English's house, he stopped over and came by the Fuentes house on occasion, and ate meals there. Although these facts are consistent with English's testimony as to when Santos moved in with her, the court cannot ignore the testimony of plaintiff and Eva that Santos only temporarily moved out of their house after an argument. Plaintiff indicated that in September of 2015 he and Eva had an argument with Santos and that Santos packed some bags full of clothes and left their house. Plaintiff also stated that Santos "came by the house" a "couple days later" and "ate with us." Eva acknowledged that Santos took his clothes and other personal belongings from her house when he went to English's Tobyhanna house, and that some of his things remained at English's house until his death, but she also stated that she picked Santos up at English's house a few days after their argument and he only brought a book bag full of clothes to her house. Eva and plaintiff then both stated that Santos remained living at their house until the accident.

Additionally, Santos remained in school at Pocono Mountain East High School, the district in which plaintiff resided. English stated that Santos commuted from her house to school every day, but plaintiff and Eva testified

23

that Santos was living with them when he went to school. Further, the evidence is disputed as to whether Santos returned to plaintiff's house every evening after he worked at the Great Wolf Lodge, or whether he drove to and from work with English and then returned to her Tobyhanna house after work.

The court has considered the September 15, 2020 deposition excerpts of plaintiff and Eva, (Docs. 69-1 & 69-2), in which they testified that Santos was living with them from that time they moved into their house in 2012 until the time of the accident and that he did not live with anyone else. Thus, there are numerous disputes in the evidence regarding where Santos was physically living from September 2015 until the accident. On the one hand, plaintiff's evidence shows that Santos only temporarily left his house after the fight he had with his parents, but on the other hand, defendant has presented evidence to show that Santos took almost all of his clothes to English's house and plaintiff made Santos return the keys to his house. The court finds that the evidence submitted by both parties establish genuine disputes of material facts. A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In short, although English and her mother were clear that after Santos moved in with them in September 2015, he remained living with them the entire time until his death, plaintiff and Eva were equally clear that Santos

24

only stayed with English for a short time after their argument and then returned to their house where he continued to live until the accident. Further, the   testimonies presented by both parties are corroborated by other evidence in the record regarding Santos' residence, as discussed above.

Also, since the evidence is disputed, the court need not address plaintiff's alternate contention that even if Santos moved out of his house in September 2015, Santos had a dual residency. *See* Estate of Parzych, 675 F.Supp.2d at 510 ("The [plaintiffs] cite no case law to suggest that such evidence is sufficiently probative of [their son's] purported dual residence."). In any event, such a theory is not supported by the record since the evidence either shows that Santos moved in with English or that he remained living at plaintiff's house, depending on who the factfinder determines is more credible. At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations).

Thus, the court will deny defendant's motion for summary judgment, (Doc. 35), with respect to plaintiff's Underinsured Motorist and Breach of Contract Claims, Counts One and Two of his complaint. The court will also

deny defendant's counterclaim for Declaratory Judgment pursuant to 28 U.S.C. §2201, *et seq.*, (Doc. 12 at 20-25), The plaintiff's motion for summary judgment regarding Counts One and Two of his complaint, (Doc. 55), will also be denied. In short, there exist too many disputed material facts as to whether Santos was a "family member" of plaintiff's household at the time of the accident.

Next, the court considers plaintiff's remaining statutory bad faith claim, Count Three.

Under Pennsylvania law, an insured party can receive punitive damages and other relief if the insurer acts in bad faith toward the insured party. *See* 42 Pa. C.S.A. §8371. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

The plaintiff has the burden in establishing the defendant acted in bad faith. "To succeed on a bad faith claim, a plaintiff must demonstrate by clear and convincing evidence '(1) that the insurer lacked a reasonable basis for

denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.'" *Verdetto v. State Farm Fire & Cas. Co.*, 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) *aff'd*, 2013 WL175175 (3d Cir. Jan. 17, 2013) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997)). In short, the plaintiff must show the defendant failed to make good faith efforts to settle the claim for a reasonable value given the plaintiff's injuries. If plaintiff fails to show either of the above elements, his bad faith claim fails as a matter of law.

"Pennsylvania law defines bad faith in insurance actions as '"any frivolous or unfounded refusal to pay proceeds of a policy", and "[b]ad faith extends not just to an insurer denying a claim, but also to the insurer's other actions, such as investigation or failing to communicate with the insured." Merrone v. Allstate Ins. Co., 2019 WL 5310576, *5 (W.D. Pa. Oct. 21, 2019) (internal citations omitted).

The court in Merrone, *id.*, explained plaintiff's heavy burden to prevail on a bad faith claim, and stated:

> The plaintiff in a bad faith case carries the burden of proof, and a mere preponderance of the evidence is not enough—Plaintiff must prove bad faith by clear and convincing evidence. *See Hall v. Brown*, 526 A.2d 413, 416 (Pa. Super. Ct. 1987), *aff'd*, 564 A.2d 916 (Pa. 1989). This requires a plaintiff to shows that the evidence is "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004).

Accordingly, Plaintiff carries a heavy burden to defeat summary judgment.

The court finds that plaintiff has not presented clear and convincing evidence that the defendant acted in bad faith when it denied his claim for UIM benefits for Santos Estate under his Policy. In fact, the court has found that the evidence is very much disputed as to whether defendant properly denied plaintiff's UIM claim under his Policy based on its finding that Santos was residing with English at the time of the accident. The court does not repeat its discussion of the evidence since it has been fully detailed above. Suffice to say that the course of its investigation of plaintiff's UIM claim, defendant discovered that, at the time of the accident, Santos may not have met the definition of "Family member" as provided for in plaintiff's Policy. Defendant relied upon the statements of English and Garcia that Santos was living with them, as well as the facts that after he moved into Garcia's house, plaintiff removed Santos from his Policy and that Santos bought his own car and obtained his own auto policy in which he listed his address as Garcia's house. Defendant then requested plaintiff to provide more information regarding where Santos was living at the time of the accident. Defendant considered plaintiff's documentation, including a copy of Santos' driver's license and tax forms reflecting his address was plaintiff's house, but still determined that Santos was residing with English and her mother since

September 2015. No doubt that "[u]nder Pennsylvania law, insurers are permitted to 'conduct a thorough investigation' of a questionable claim without acting in bad faith", and "[w]here an insurer sees red flags' that cause concern of insurance fraud and prompt an investigation, the insurer has a reasonable basis for investigation, and is therefore not liable for claims of bad faith." *Id.* (internal citations omitted).

As discussed above, plaintiff presented documentation to show that Santos still considered plaintiff's house as his residence, but defendant certainly had sufficient evidence that showed Santos' physical residence was at English's house. Defendant had more than a reasonable basis to investigate where Santos was really residing at the time of the accident since it had ample evidence to show that he may have moved out of plaintiff's house months before the accident. Defendant was then entitled to conduct its own investigation and its finding that Santos was not residing with plaintiff and was not a covered family member as defined in plaintiff's Policy was reasonably based on evidence it uncovered. Thus, defendant's denial plaintiff's UIM claim made on behalf of Santos Estate was not an act in reckless disregard of its obligations under plaintiff's Policy.

Nor does the court find that defendant "outrageously forced [plaintiff] to file a Complaint to collect UIM benefits that were owed to Plaintiff", as plaintiff

alleges, (Doc. 63 at 27), since plaintiff had already initiated his lawsuit when defendant "exercised its right to serve a Rule to File Complaint after it determined it did not have enough information at that time to pay the 2nd tier UIM claim." Rather, defendant instructed plaintiff to file a complaint so that it could develop the facts as to Santos' residence. Indeed, as defendant points out, the court held in <u>Fabrikant v. State Farm Fire and Cas. Co</u>., 2012 WL 1677293 at *14. (M.D. Pa. May 14, 2012), that "an insurer's exercising its procedural right to serve a Rule to File Complaint is not bad faith, absent a showing of clear and convincing evidence that such action was taken in bad faith." In fact, defendant was obliged to investigate where Santos was physically residing at the time of the accident in order to properly consider plaintiff's UIM claim, especially since there was evidence that his residence was at English's house.

Thus, the court will grant defendant's motion for summary judgment with respect to plaintiff's bad faith claim, Count Three, since plaintiff failed to show by clear and convincing evidence that defendant lacked a reasonable basis to investigate Santos' residence at the time of the accident, and defendant is entitled to judgment as a matter of law.

## IV.    CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment, **(Doc. 35)**, will be **DENIED** with respect to Counts One and Two of plaintiff's complaint, **(Doc. 1-7)**, and will be **GRANTED** with respect to Count Three. Judgment will be entered in favor of the defendant and against plaintiff on the bad faith claim in Count Three. Defendant's motion for summary judgment with respect to its counterclaim for Declaratory Judgment, **(Doc. 12 at 20-25)**, will be **DENIED**. Plaintiff's motion for summary judgment, **(Doc. 55)**, on his claims raised in Counts One and Two of his complaint will be **DENIED**.

An appropriate Order will issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: April 1, 2021**
11-1111-02

31